```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
JGV APPAREL GROUP, LLC,                                           :
                                                                  :
                                              Plaintiff,          :
                                                                  :
                         -v-                                      :
                                                                  :
OMRI ABU; HEALTH SUPPLY 770 INC.;                                 :
MEDICAL SUPPLY 770 INC.; and MINERAL                              :
BEAUTY 707 INC.,                                                  :
                                                                  :
                                              Defendants.         :
                                                                  :
----------------------------------------------------------------- X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/8/2024

1:22-cv-9210-GHW-JLC

MEMORANDUM OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

Plaintiff JGV Apparel Group, LLC ("JGV"), introduced Defendant Health Supply 770 Inc. ("Health Supply") to a buyer, who then purchased 75,600 COVID-19 tests from Health Supply. JGV asserts that it brokered the sale and is entitled to a commission from Defendants. Defendants move for summary judgment, arguing that Plaintiff's claims of breach of contract, fraudulent inducement, and unjust enrichment should be dismissed. Dkt. No. 39 (the "Motion"). Magistrate Judge James L. Cott issued a Report and Recommendation, recommending that Defendants' motion be denied in full. Dkt. No. 47 (the "R&R"). Defendants object. Dkt. No. 49 (the "Objections"). As explained below, because there is no writing that reflects the price term for an agreement to broker the sale of COVID-19 tests, Plaintiff's breach of contract claim is barred by the statute of frauds and dismissed. And, because Plaintiff has failed to show it incurred any costs or expenses, Plaintiff's fraudulent inducement claim is dismissed.

**I.     BACKGROUND**

The parties do not dispute the description of the factual and procedural history of this case as laid out in the R&R. The Court assumes the reader's familiarity with the R&R and only briefly

sets out the relevant history below as is relevant to the Court's analysis.[1]

Victor Green is a member of JGV.  Dkt. No. 42 ¶ 3 (Defendants' rule 56.1 statement).  During the COVID-19 pandemic, Green and JGV tried to broker or sell personal protective equipment with/to various parties.  *Id.* ¶ 4.  Defendant Health Supply is a business that buys and sells personal protective equipment.  *Id.* ¶ 5.  Defendant Omri Abu is the principal of Health Supply.  *Id.* ¶ 6.

In early January 2022, Green and Abu sent text messages to each other about a possible sale of COVID-19 tests.  *See* Dkt. No. 43-5 (text messages); Dkt. No. 45 ¶ 10 (referencing the parties' text messages).  On or about January 4, 2022, Green and Abu had a telephone call and discussed an arrangement where Health Supply would pay JGV a commission for introducing a buyer who would buy COVID-19 rapid tests from Health Supply.  *Id.* ¶ 7.  Following that call, Abu sent Green text messages containing the following statements and photographs of COVID-19 tests:

 

---

[1] The facts are drawn from the parties' Local Civil Rule 56.1 statements and other documents in the record.  The facts are undisputed unless otherwise noted.

*Id.* ¶ 8. As shown in these images, the photographs showed packages containing 40 COVID-19 tests per package. *Id.*[2] Abu then represented that the "[p]rice will be 8.5." *Id.*[3]

Plaintiff introduced Abu to a buyer, AO Apparel, which eventually purchased 75,600 COVID-19 tests from Health Supply on or about January 18, 2022.[4] Dkt. No. 45 ¶¶ 9, 15 (Plaintiff's rule 56.1 statement); *see also* Dkt. No. 43-3 ("Abu Dep. Tr.") at 51–52 (describing Green sharing phone numbers and the buyer's subsequent outreach to Abu); Dkt. No. 43-6 at 9–10 (date of transaction).

On January 5, 2022, Abu sent Green an invoice for the sale of "40 Tests\Box" COVID-19 tests, at a price of $10.00 per test, as shown below.

| Code | Description | Quantity | Rate | Amount |
|---|---|---|---|---|
| IH40TC | iHealth Covid-19 AG OTC tests, EUA approved, 40 Tests\Box<br>iHealth Covid-19 AG OTC tests, EUA approved, 40 Tests/Box | 50,400 | $10.00 | $504,000.00 |

Dkt. No. 41-3; *see also* Dkt. No. 43-4 (same invoice); Dkt. No. 42 ¶ 9. The COVID-19 tests actually sold to AO Apparel, however, were packaged in groups of two, as shown by an invoice from Health Supply to AO Apparel:

| Code | Description | Quantity | Rate | Amount |
|---|---|---|---|---|
| | iHealth Covid-19 Antigen Rapid Test (Self-Test At Home) 2 tests per kit<br>2 tests per kit | 45,360 | $20.00 | $907,200.00 |

---

[2] Plaintiff contends that the images sent by Abu "was for the purposes of providing verification . . . that the Defendant did indeed have covid test products available," but the product depicted in the image "was not in fact the actual product that was being sold as part of this transaction." Dkt. No. 45 ¶ 8 (Plaintiff's rule 45.1 statement).
[3] Defendants concede that Health Supply offered Plaintiff a commission of the final sale price minus $8.50 per COVID-19 test, but *only* for the sale of 40-test packs. Dkt. No. 42 ¶ 10; Objections at 13–14.
[4] The parties represent that AO Apparel bought five pallets of COVID-19 tests, where each pallet held 7,560 packs of two tests, for a total of 75,600 tests in total. *See* Dkt. No. 45 ¶ 18; Objections at 8. This is in spite of a January 14, 2022 purchase order and a January 18, 2022 invoice that list six pallets, reflecting 45,360 packs of two, or 90,720 tests in total. *See* Dkt. No. 41-4 (purchase order); Dkt. No. 43-6 at ECF p. 9 (invoice). Wire transfer receipts also match the prices and payments reflected in the purchase order and invoice for six pallets. *Compare* Abu Dep. Tr. at 72–73 (stating that the purchase order was incorrect), *with* Dkt. No. 43-6 at ECF pp. 3–7 (wire transfer receipts).

Dkt. No. 43-6 at 9; *see also* Dkt. No. 45 ¶ 18; Dkt. No. 41-4 (purchase order from AO Apparel to Health Supply showing "2pc pack"). The final sale price—as reflected in the invoice—was $20.00 per pack, or $10.00 per test. Dkt. No. 43-6 at 9; Dkt. No. 45 ¶¶ 9, 18.

On February 10, 2022, a representative of Health Supply emailed Victor stating, "Good afternoon Victor I am setting up a wire for our commission but I would please need a w9." Dkt. No. 43-7 at 2. Health Supply wired JGV $6,426.00 the same day. *Id.* at 3; *see also* Dkt. No. 45 ¶ 19.

Plaintiff filed this action on October 27, 2022, asserting claims for breach of contract, fraudulent inducement, and unjust enrichment against Defendants. Dkt. No. 1 ¶¶ 42–68. Plaintiff seeks to recover the remainder of the commission purportedly owed to Plaintiff for brokering the sale to AO Apparel, plus fees, costs, and other relief. *Id.* ¶ 68. This case was referred to Judge Cott for general pretrial purposes and dispositive motions. Dkt. No. 10. On August 14, 2023, Defendants moved for summary judgment. Dkt. No. 39; *see also* Dkt. Nos. 40, 41, 42 (supporting materials). Plaintiff opposed on September 15, 2023. Dkt. Nos. 43, 44, 45. Defendants filed a reply on September 29, 2023. Dkt. No. 46.

On February 5, 2024, Judge Cott issued an R&R, recommending that the Court deny Defendants' motion for summary judgment in full. Dkt. No. 47. Judge Cott concluded that Plaintiff's breach of contract claim was not barred by the New York statute of frauds because: (1) the parties' oral agreement was one that could be performed within a year; and (2) an oral broker agreement was sufficiently reflected in various documents in the record to satisfy the statute of frauds. R&R at 11–20. Judge Cott then concluded that there was a genuine dispute of material fact as to Plaintiff's breach of contract claim and that it was premature to dismiss Plaintiff's alternative claims of fraudulent inducement and unjust enrichment. *Id.* at 20–22.

Defendants filed timely objections to the R&R on February 20, 2024.[5] Dkt. No. 49. On March 6, 2024, Plaintiff filed a response. Dkt. No. 50. The Court has reviewed the motion for summary judgment briefing, the R&R, the Objections, and Plaintiff's response to the Objections.

## II. LEGAL STANDARD

### A. Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise specific, written objections to the report and recommendation within fourteen days of receiving a copy of the report. *Id.*; *see also* Fed. R. Civ. P. 72(b)(2).

When a party timely objects to a magistrate's report and recommendation, a district court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). But where "the party makes only frivolous, conclusory or general objections, or simply reiterates her original arguments, the Court reviews the report and recommendation only for clear error." *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 416 (S.D.N.Y. 2014) (quoting *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007)). "Further, the objections 'must be specific and clearly aimed at particular findings in the magistrate judge's proposal.'" *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (quoting *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)).

The Court reviews for clear error those parts of the report and recommendation to which no party has timely objected. 28 U.S.C. § 636(b)(1)(A); *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).

---

[5] As the Court noted in its February 21, 2024 order, Defendants improperly labeled the ECF entry of their Objections as a new "motion for summary judgment," though the title and contents of the document itself clearly reflected that Defendants were objecting to the Report. Dkt. No. 49.

5

### B. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). To defeat a motion for summary judgment, the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)) (emphasis removed). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586 (citations omitted), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236 (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citation omitted); *see also Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citation omitted).

### III. DISCUSSION

#### A. The Statute of Frauds

No party objects to the R&R's conclusions that: (1) the parties' oral agreement could be completed within one year and therefore is not barred by the statute of frauds under N.Y. General Obligations Law § 5-701(a)(1), which governs any agreement that "[b]y its terms is not to be performed within one year . . . ," *see* R&R at 11–14; and (2) the parties entered into an oral broker agreement subject to N.Y. General Obligations Law § 5-701(a)(10), which governs contracts "to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing . . . a business opportunity," *see id.* at 14–15 (noting "the parties agree" on this point). Given the lack of objections, the Court has reviewed these portions of the R&R for clear error and finds none. *See, e.g.*, *Braunstein v. Barber*, No. 06-cv-5978, 2009 WL 1542707, at *1 (S.D.N.Y. June 2, 2009) (explaining a "district court may adopt those portions of a report and recommendation to which no objections have been made, as long as no clear error is apparent from

7

the face of the record").[6]

The R&R also concluded that the parties' oral broker agreement was not barred by the statute of frauds because the various documents in evidence reflecting the parties' agreement "collectively constitute a writing" sufficient to survive the statute of frauds. *See* R&R at 15–20. Defendants object, arguing that there is no writing that satisfies the statute of frauds *and* reflects the sale that ultimately occurred—of 40-test packs. Objections at 1. The Court reviews this portion of the R&R *de novo*. Because the documents in evidence do not show the pricing term—an essential term—of the parties' broker agreement, Plaintiff's breach of contract claim is barred by the statute of frauds, and the Court declines to adopt the R&R in relevant part.

"The adequacy of a writing, for purposes of the statute of frauds, 'must be determined from the documents themselves, as a matter of law.'" *ABA Refinery Corp. v. Republic Metals Refin. Corp.*, No. 15-cv-8731 (GHW), 2017 WL 4481170, at *4 (S.D.N.Y. Oct. 15, 2017) (quoting *Hilord Chem. Corp. v. Ricoh Elecs., Inc.*, 875 F.2d 32, 36–37 (2d Cir. 1989)). "To be considered a sufficient memorandum within the ambit of the Statute of Frauds, a writing must designate the parties, identify and describe the subject matter and state *all* the essential or material terms of the contract." *DeRosis v. Kaufman*, 641 N.Y.S.2d 831, 832–33 (1st Dep't 1996); *see also Morris Cohon & Co. v. Russell*, 23 N.Y.2d 569, 575 (1969) (noting "the well-established rule that in a contract action a memorandum sufficient to meet the requirements of the Statute of Frauds must contain expressly or by reasonable implication all the material terms of the agreement"). "[A]n agreement may be pieced together from separate writings," provided that the writings are "connected with one another either expressly or by the internal evidence of subject matter and occasion." *DeRosis*, 641 N.Y.S.2d at 833 (quotations omitted).

By contrast, the R&R stated that the writings in question do not need to "reflect all material

---

[6] To the extent that no party objects to other portions of the R&R, the Court has reviewed such portions for clear error and finds none. *See, e.g.*, R&R at 9 (applying New York law).

terms" of the agreement to satisfy the statute of frauds, provided that they sufficiently "establish[] . . . the existence of the alleged finder's agreement and its subject matter . . . ." R&R at 17 (quotation omitted). It concluded that, "[w]hile they may not outline all the material terms of the parties' broker agreement, these documents [in evidence] more than sufficiently 'establish . . . the existence of the alleged finder's agreement and its subject matter.'" *Id.* at 19 (quoting *Case Prop. Servs., LLC v. Columbia Props. Phoenix, L.P.*, No. 17-cv-3110 (NSR), 2023 WL 2664262, at *13 (S.D.N.Y. Mar. 27, 2023)). The Court respectfully disagrees—at least, as to Plaintiff's breach of contract claim.[7] The requirement that all essential or material terms be in writing to satisfy the statute of frauds, at least in a breach of contract claim, is "well-established" in New York law, *see Morris Cohon & Co.*, 23 N.Y.2d at 575, and "has been settled law in this state for over a century," *DeRosis*, 641 N.Y.S.2d at 833.

The R&R also reached its conclusion in part by relying on deposition testimony, noting that "because JGV has produce[d] admissible evidence that supports its pleadings, summary judgment on this ground should be denied as a matter of law." R&R at 19 (quotation and citation omitted) (alteration in original). But, as already noted, "[t]he adequacy of a writing, for purposes of the statute of frauds, must be determined from the documents themselves as a matter of law." *ABA Refinery Corp.*, 2017 WL 4481170, at *4. "Parol evidence . . . is immaterial to the threshold issue [of] whether the documents are sufficient on their face to satisfy the Statute of Frauds. Consideration of parol evidence in assessing the adequacy of a writing for Statute of Frauds purposes would otherwise undermine the very reason for a Statute of Frauds in the first instance." *DeRosis*, 641 N.Y.S.2d at 833 (quoting *Bazak Int'l Corp. v. Mast Indus.*, 73 N.Y.2d 113, 118 (1989)). The Court must look only to the documents at issue to determine whether they satisfy the statute of frauds and ignore

---

[7] The R&R's analysis is, however, applicable to Plaintiff's unjust enrichment claim, as explained in more detail below. Indeed, *Case Property Services, LLC*, upon which the R&R relies, analyzes an unjust enrichment claim. *See* 2023 WL 2664262, at *13 (denying summary judgment on unjust enrichment claim); *see also Marcella v. ARP Films, Inc.*, 778 F.2d 112, 117 (2d Cir. 1985) ("[E]ven if [plaintiff] were unable to recover on his contract claim by virtue of the statute of frauds, under New York law, . . . there may still be recovery of the reasonable value of the services rendered." (quotation omitted)).

9

deposition testimony and other extrinsic evidence.[8]

Turning to reviewing the various documents in evidence—including the parties' "invoices, purchase order, and text messages" that the R&R concluded "collectively constitute a writing under the statute of frauds," R&R at 15—the Court concludes that they fail to satisfy the statute of frauds. The "essential terms" of a contract that must be set forth in writing to satisfy the statute of frauds "include, inter alia, the terms of payment." *Behrends v. White Acre Acquisitions, LLC*, 865 N.Y.S.2d 227, 228 (2d Dep't 2008) (quotation omitted) (finding contract unenforceable because formula for determining sale price was not sufficiently definite). *Cf. Ansorge v. Kane*, 244 N.Y. 395, 398 (1927) ("If a material element of a contemplated contract is left for future negotiations, there is no contract enforceable under the statute of frauds or otherwise. The price is a material element of any contract of sale . . . ."). Here, the documents at issue do not satisfy the statute of frauds because they do not reflect an essential term: the price to be paid Plaintiff as commission for purportedly brokering the sale to AO Apparel.

The parties have submitted the following documents reflecting the parties' transactions: the text messages between Abu and Green, *see* Dkt. No. 43-5, Dkt. No. 42-1 ¶ 8[9]; an invoice from Health Supply to JGV, Dkt. Nos. 41-3, 43-4; a purchase order and an invoice between Health Supply and AO Apparel, Dkt. Nos. 41-4, 43-6 at 2, 9–10; wire transfer receipts between Health Supply and AO Apparel, Dkt. No. 43-6 at 3–8; and the February 10, 2022 email and wire transfer from Health Supply to Green and JGV, Dkt. No. 43-7. Nowhere in the documents is a statement of the commission to be paid to Plaintiff. Abu and Green discuss "price" at several points during their text messages—most notably Abu's statement on January 4, 2022 that the "[p]rice will be 8.5," Dkt.

---

[8] The Court also does not rely on extrinsic evidence cited by Defendants, such as Green's deposition testimony and Defendants' ultimate profit from the sale. *See* Objections at 9, 15.
[9] Defendants' Rule 56.1 statement contains a color image of the January 4, 2022 texts reproduced above. A black-and-white image of a portion of this conversation is also available at Dkt. No. 43-1.

No. 45 ¶ 8—but nothing states that this is the price to be paid to Plaintiff.  In particular, given that Abu's "8.5" price accompanied a photograph of a *40-test* pack, there is no writing that shows a price term for Plaintiff's commission for a sale of *2-test* packs.[10]  In short, while Plaintiff asserts—and Defendants do not deny—that the parties discussed a specific commission price to be paid Plaintiff for brokering a sale of COVID-19 tests, such a pricing term was not reduced to writing.[11]

Because the price term of the parties' oral broker agreement is an essential term of the agreement and is not reflected in the documents, there is no writing that satisfies the statute of frauds with regard to Plaintiff's breach of contract claim.  *See, e.g.*, *Wolet v. Capital Corp. v. Walmart Inc.*, No. 18-cv-12380 (LJL), 2021 WL 242297, at *8 (S.D.N.Y. Jan. 25, 2021) ("The absence of any writing or series of writings that contains the essential terms—including scope of services, duration, price term, and an unambiguous statement of [Defendant's] obligation to compensate [Plaintiff]—is fatal to Plaintiff's claim for breach of contract under the Statute of Frauds.").  Plaintiff's breach of contract claim is therefore barred by the statute of frauds.

Accordingly, the Court declines to adopt the R&R in relevant part, grants Defendants' summary judgment motion as to Plaintiff's breach of contract claim, and dismisses the claim.[12]

### B.   Plaintiff's Fraudulent Inducement Claim

The R&R concluded that it was premature to dismiss Plaintiff's fraudulent inducement claim as duplicative of the breach of contract claim.  R&R at 21–22.  Defendants object, arguing that the R&R ignored the alternative argument that Plaintiff's fraudulent inducement claim should be dismissed for failure to provide evidence of any damages resulting from the alleged fraud.

---

[10] The invoice Health Supply sent to JGV, while reflecting a different price of $10.00, is also for packs of 40 tests.  Dkt. No. 43-4.

[11] While Defendants acknowledge that "Health Supply offered to pay Plaintiff a commission in the amount above $8.50/test that Health Supply received from the buyer," they argue the offer was for the sale of 40-test packs specifically, not the 2-test packs that were ultimately sold.  Objections at 13–14.

[12] Because the Court dismisses Plaintiff's breach of contract claim on statute of frauds grounds, it needs not—and does not-- address the R&R's conclusion that a genuine dispute of material fact as to the claim remains.  *See* R&R at 20–21.

11

Objections at 17; *see also* Dkt. No. 40 at ECF pp. 19–20 (Defendants' motion for summary judgment brief). The R&R did not address this argument. The Court reviews this argument *de novo* and, because Plaintiff's evidence is insufficient to establish an essential element of its fraudulent inducement claim, Plaintiff's claim of fraudulent inducement claim is dismissed.

"Where, as here, the burden of persuasion at trial would be on the non-moving party . . . the party moving for summary judgment may" demonstrate the absence of a genuine issue of material fact by "either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017).

"To prove fraudulent inducement under New York law, the plaintiff must establish by clear and convincing evidence '(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [plaintiff]; and (iv) resulting damages.'" *CCM Rochester, Inc. v. Federated Invs., Inc.*, 234 F. Supp. 3d 501, 506 (S.D.N.Y. 2017) (quoting *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012)). For what constitutes "resulting damages," New York law does not permit recovery of lost profits for a fraudulent inducement claim; a plaintiff may only recover actual pecuniary losses. *See, e.g., Kumiva Grp., LLC v. Garda USA Inc.*, 45 N.Y.S.3d 410, 413 (1st Dep't 2017) ("While a plaintiff alleging breach of contract is entitled to damages restoring the full benefit of the bargain, a plaintiff alleging fraudulent inducement is limited to 'out of pocket' damages, which consist solely of the actual pecuniary loss directly caused by the fraudulent inducement."); *see also Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 453 (S.D.N.Y. 2006) ("New York law does not allow a plaintiff to recover expectancy damages in an action based in fraud."). A fraudulent inducement claim does not permit recovery of "what [plaintiff] would have been paid under the alleged oral agreement." *See Lehman v.*

12

*Dow Jones & Co.*, 783 F.2d 285, 296 (2d Cir. 1986) (finding such damages to be "clearly an attempt to recoup [plaintiff's] 'loss-of-benefit' or contract damages" rather than "actual pecuniary loss").

Defendants are entitled to summary judgment on Plaintiff's fraudulent inducement claim because there is no evidence that Plaintiff suffered any actual pecuniary loss as a result of Defendants' conduct. As Defendants note, Green admitted during his deposition that Plaintiff did not have to "actually lay out any money" as a part of the agreement at issue in this case. *See* Dkt. No. 41-1 at 29:4–13 (Green deposition transcript). Plaintiff did not respond to this point in its response to the Objections or in its opposition to Defendants' motion for summary judgment. *See* Dkt. Nos. 44, 50. Nor is the Court aware of any evidence in the record showing that Plaintiff suffered actual pecuniary loss as a result of Defendants' conduct. Because there is no evidence of any damages Plaintiff could recover on its fraudulent inducement claim, no reasonable trier of fact could find in favor of Plaintiff on the claim.

Accordingly, the Court declines to adopt the R&R in relevant part, grants Defendants' summary judgment motion as to Plaintiff's fraudulent inducement claim, and dismisses the claim.

### C. Plaintiff's Unjust Enrichment Claim

The R&R concluded that it was premature to dismiss Plaintiff's unjust enrichment claim as duplicative of the breach of contract claim. R&R at 21–22. Defendants argue that "if the breach of contract claim should be dismissed under the statute of frauds, the unjust enrichment claim should be dismissed for those reasons as well." Objections at 19–20. The Court reviews this argument *de novo*, and, because Plaintiff's unjust enrichment claim does not require Plaintiff's commission to be in writing, the Court finds that Plaintiff's unjust enrichment claim survives the statute of frauds.

The statute of frauds governing broker agreements states, in most relevant part, that "[t]his provision shall apply to a contract implied in fact or in law to pay reasonable compensation . . . ." N.Y. General Obligations Law § 5-701(a)(10). As the New York Court of Appeals has noted, this

language is intended to make clear that the statute of frauds governs unjust enrichment and quantum meruit claims as well as contract claims. *Snyder v. Bronfman*, 13 N.Y.3d 504, 508 (2009) ("Unjust enrichment and quantum meruit are, in this context, essentially identical claims, and both are claims under a contract implied . . . in law to pay reasonable compensation." (quotations omitted) (alteration in original)); *see also Bradkin v. Leverton*, 26 N.Y.2d 192, 198 (1970) ("A contract to pay a finder's fee must, of course, be in writing and, obviously, this requirement may not be avoided by an action for compensation in [q]uantum meruit."). Defendants argue that this means that, if a breach of contract claim is barred under the statute of frauds, an unjust enrichment claim necessarily must be barred as well. Objections at 19. This argument misunderstands the law.

While an unjust enrichment claim is subject to the statute of frauds, as is a breach of contract claim, a critical distinction exists between what the statute of frauds requires for each claim. As already noted, a contract that satisfies the statute of frauds must explicitly include the price agreed-upon by the parties. "In an action in [q]uantum meruit, however, for the reasonable value of brokerage services, if it does not appear that there has been an agreement on the rate of compensation, a sufficient memorandum need only evidence the fact of plaintiff's employment by defendant to render the alleged services." *Morris Cohon & Co.*, 23 N.Y.2d at 575–76. "The obligation of the defendant to pay reasonable compensation for the services is then implied." *Id.* at 576.

Here, the documents reflecting the parties' oral broker agreement are sufficient to satisfy the statute of frauds as to Plaintiff's unjust enrichment claim. Together, the writings show: Defendants discussed the details of a sale of COVID-19 tests with Plaintiff; Defendant Health Supply soon after sold COVID-19 tests to a buyer, AO Apparel; and Health Supply then emailed Plaintiff to arrange for the payment of its "commission." *See, e.g.*, Dkt. Nos. 43-1, 41-3, 43-6 at 2 and 9–10, 43-7. Critically, the email (and subsequent wire payment) demonstrates an acknowledgment by

Defendants that Plaintiff performed a service for Defendants and was owed a payment.[13]  This is sufficient for Plaintiff's unjust enrichment claim to survive the statute of frauds.  *See, e.g.*, *Morris Cohon & Co.*, 23 N.Y.2d at 574–75 (holding a quantum meruit claim survives statute of fraud where a writing "identifies the parties to the contract, the subject matter of the contract[,] and establishes that plaintiff in fact performed," including "an admission by the defendant that plaintiff performed services and that an obligation to plaintiff actually existed"); *Springwell Corp. v. Falcon Drilling Co., Inc.*, 16 F. Supp. 2d 300, 314–17 (S.D.N.Y. 1998) (holding a quantum meruit claim survived statute of frauds where "the disagreement between the parties appeared limited to the amount of compensation, not to the expectation that some compensation would be paid").

Accordingly, Defendants' motion for summary judgment as to Plaintiff's unjust enrichment claim is denied.

## IV.   CONCLUSION

For the above reasons, the Court adopts in part and declines to adopt in part the R&R, and Defendants' motion for summary judgment, Dkt. No. 39, is GRANTED in part and DENIED in part.  Plaintiff's claims for breach of contract and fraudulent inducement are dismissed.

SO ORDERED.

Dated: May 8, 2024
       New York, New York

_____
GREGORY H. WOODS
United States District Judge

---

[13] Defendants attempt to argue, in relying on the deposition testimony of Abu, that this payment to Plaintiff arose simply out of a desire by Abu to "take care of [Green]" and "help him out because [Green] was in a bad situation."  *See* Dkt. No. 40 at 13.  As already discussed, the Court cannot rely on extrinsic evidence in a statute of frauds analysis.  Separately, to the extent that Defendants argue that they only discussed the sale of 40-test packs with Plaintiff and not the sale of 2-test packs that occurred, this is belied by Defendants' acknowledgment, after the sale of 2-test packs, that Plaintiff was owed a "commission."